## In re CHUNG FAT et al.

(District Court, D. Washington, N. D. August 18, 1899.)

1. THIRTEENTH CONSTITUTIONAL AMENDMENT—INVOLUNTARY SERVITUDE—SEA-
MEN—HABEAS CORPUS.

Alien seamen, who are being coerced to labor on board an American
vessel against their will, and without having voluntarily entered into any
contract binding them to such service, are being subjected to involuntary
servitude within the United States, in violation of the thirteenth consti-
tutional amendment, and are entitled to a writ of habeas corpus to deliver
them from such servitude.

2. SEAMEN—SHIPPING ARTICLES—DEVIATION OF SHIP FROM ORDINARY VOYAGE
—RELEASE.

An American registered vessel had been engaged for a number of years
in the carrying of passengers and freight between the ports of Hong Kong,
China, and Tacoma, in the United States, touching at other ports in
China, Japan, and British Columbia. For such voyages it employed Chi-
nese seamen in Hong Kong, the custom being to consider their term of
service as ended on the completion of the round trip and return of the
vessel to Hong Kong, which was the port of discharge, although the ship-
ping articles fixed the term of service at six months, and authorized the
vessel to go "to any other ports or places in any part of the world, as the
master may direct." On the arrival of the vessel at Tacoma on one of its
usual voyages, it was chartered by the United States government as a
transport to be used in conveying troops and supplies to Manilla. *Held*,
that such service on the part of the seamen was within the terms of their
shipping articles, and, as the voyage to Manilla was in the direction of
Hong Kong, and after its completion the master could either proceed to
that port, or secure transportation there for the seamen within the term
of six months, they were not entitled to be released from their contract
by reason of the deviation of the ship from its usual business or route,
but that the owners would be required to give bond for the release of the
seamen, and their return to Hong Kong, in accordance with the contract,
after completion of the voyage to Manilla.

This was a hearing on a writ of habeas corpus issued on petition
of Chung Fat and others, Chinese seamen on the steamship Vic-
toria, by which the petitioners seek to obtain their release from serv-
ice, and their return to China. Dismissed.

Frank Allyn and Frederick Bausman, for petitioners.
J. M. Ashton, for respondent.
Wilson R. Gay, U. S. Atty.

HANFORD, District Judge. The petitioners are Chinese seamen,
who were hired on the 26th day of June, 1899, at Hong Kong, to serve
as part of the crew of the steamship Victoria, the vessel then being
engaged in general commerce as a carrier of passengers and freight
between Hong Kong and other ports in China and Japan, and Ta-
coma and other Pacific coast ports of the United States and British
Columbia. The shipping articles which they signed describe the
voyage and term of service for which they were engaged as follows:
"From said port of Hong Kong to Tacoma, Wash., U. S. A., via
China and Japan ports, or to any other ports or places in any part
of the world, as the master may direct. Final port of discharge to
be Hong Kong, and term of agreement not supposed to exceed six

months." The Victoria is a foreign-built steamship, which, by an act of congress approved June 16, 1898, was granted the privilege of being registered as a vessel of the United States. The privilege of being so registered was presumably granted in contemplation of the use which our government expected to make of her as a transport ship or auxiliary cruiser during the war between the United States and Spain. On her arrival at Tacoma with the petitioners on board, the government did engage said vessel as a transport to carry troops, horses, munitions of war, and provisions for the army, from Puget Sound to Manilla, and she is now being fitted for that service. The petitioners consider that the service for which the ship has been engaged since her last arrival at Tacoma is entirely different from the service contemplated at the time they signed the shipping articles, and that, if they are required to go to Manilla as seamen on a vessel in the service of the United States, while that country is under military government, there is probability of their being exposed to dangers of an unusual character, and detained in the service of the ship beyond the term of their engagement, and for these reasons the new employment of the ship is a departure from the terms of their contract specified in the shipping articles, which entitles them to be discharged, and they allege that they are unwilling to continue in the service of the ship under present conditions, and yet the captain will not discharge them, but requires them to continue to perform duty against their will, and this, they allege amounts to subjecting them to involuntary servitude, in violation of the thirteenth amendment to the constitution of the United States, and upon these grounds they have applied to this court for a writ of habeas corpus that they may be released from unlawful detention on board of the vessel, and returned to Hong Kong, where they belong. The writ having been issued as prayed for, the captain has made a return setting forth the shipping articles, and denying that the petitioners are unlawfully imprisoned or detained on board said vessel, and alleging that by their contract the petitioners are bound to serve as seamen on said vessel on the contemplated voyage to Manilla; and further alleging that it is his purpose, if the vessel shall be kept in the service of the government after her arrival at Manilla, to provide for the return of the Chinese seamen now in the ship to Hong Kong, and to pay their wages until the time of their arrival there. The United States attorney for this district has intervened in behalf of the United States, alleging that the discharge of the petitioners from their engagement to serve as seamen at this time may interfere with the plans of the government for speedy dispatch of the vessel on the voyage contemplated, and on the further ground that the petitioners, being Chinese laborers, cannot lawfully be permitted to be landed in this country.

The case presents a number of novel and serious questions. In the first place, the respondent claims that, whatever may be the rights of the petitioners, the writ of habeas corpus is not available as a practicable remedy for their relief. I consider, however, that if, in fact, the petitioners are being coerced to labor on board an American vessel against their will, without having previously vol-

untarily entered into a contract binding them to such service, they are being subjected to involuntary servitude within the United States, in violation of the thirteenth amendment to the constitution of the United States, and to be delivered from such involuntary servitude by means of the writ of habeas corpus is a right which cannot be denied; therefore this objection to the form of the proceeding cannot stand in the way of a full inquiry into the merits of the controversy.

The evidence introduced upon the hearing shows that this vessel has been employed carrying passengers and freight between Tacoma and Hong Kong via other Oriental ports during the past six years, during all of which time part of her crew has been composed of Chinese seamen, shipped at Hong Kong under contracts similar, with respect to the nature and term of service, to the contract under consideration in this case, and that in practice the Chinese seamen have always been paid off on each return of the vessel to Hong Kong, and, although each round trip requires but little more than two months' time, and the contract of the seamen fixes the limit of the term of service at six months, each contract has been deemed to have been terminated with the performance of each voyage ending at Hong Kong. The petitioners have shown by their evidence that at the time of signing the shipping articles they had no knowledge of the contents thereof, except as they were informed through an interpreter, and that the agreement which they entered into, as it was explained to them, required them to make the voyage from Hong Kong to Tacoma and return to Hong Kong, touching only at convenient ports on the coast of China and Japan and at Victoria in British Columbia. This evidence shows that the contracts between the captain, representing the owners, and the Chinese seamen, have been heretofore construed in practice consistently with what I deem to be a fair interpretation of the words in the contract itself, and that a fair interpretation of the contract does not bind the seamen necessarily to a term of six months; nor, on the other hand, does it bind the ship to return from Tacoma to Hong Kong direct. The contract fixes alternative limitations upon the obligation of the Chinese seamen to remain in the ship. One is the return of the vessel to Hong Kong, the port of final discharge; the other is the expiration of the six months from the date of their engagement within which time it is the duty of the captain to return them to the port of final discharge. The captain is given an option to make a voyage from Tacoma to any other port for which the ship may be employed, provided he returns to Hong Kong within six months, and, in case of the vessel being employed for such additional voyage, the seamen are bound by the letter of their contract to continue in the service of the ship until the expiration of the term of six months, unless the vessel should return to Hong Kong within that time. It is practicable for this ship to make the contemplated trip to Manilla, and proceed thence to Hong Kong within the time stipulated, and, in case the exigencies of the service should require the detention of the vessel for a longer time, it is practicable to send the Chinese seamen from Manilla, or any place in the Philippine Islands to Hong

Kong, without violating the letter of the contract. It may be conceded that there are reasonable grounds for the apprehension which the petitioners seem to have that, if they are carried in this ship to the Philippine Islands, they may suffer deprivation of some of their rights, because there are no courts at present so constituted as to be able to afford them protection against the arbitrary exercise of authority by the military officers of the United States. This, however, is not a good reason for abrogating the contract at this time. It is not unusual for vessels in the merchant service to be employed to go to distant countries beyond the jurisdiction of civil governments, and it is part of the life of a sailor to trust his person to the vicissitudes of maritime ventures in places far beyond the power of courts and civil magistrates to enforce rights or redress wrongs. If the court might properly anticipate evils which may or may not happen to the petitioners at Manilla, still such considerations do not outweigh the practical difficulty of terminating the contract at this time. The laws of the country do not permit these petitioners to be landed in the United States from the ship which brought them in, and they cannot be returned direct to Hong Kong without depriving the government of the United States of the use of this vessel, or subjecting the owners to inconvenience and heavy expense in providing for their carriage from here to Hong Kong. If, by the terms of their contract, they were entitled to be discharged before the vessel proceeds on the voyage to Manilla, I would not be disposed to permit considerations of expediency or expense to outweigh the legal rights of the petitioners, but at present the conditions are reversed; the letter of the contract entitles the ship to the service of these seamen while she is proceeding to Manilla, which is so near to Hong Kong that I must regard the trip to Manilla as being in the direction of the fulfillment of the terms of the contract itself, and I consider that it would be unreasonable to attempt to coerce the captain and owners of the ship to send these petitioners to Hong Kong by another vessel, when so much unnecessary expense can be saved by requiring them to abide by the terms of their contract until they reach Manilla. The ship will have no right to detain these petitioners after arrival at Manilla, unless she is to proceed from there to Hong Kong; and I am satisfied that it is not now the purpose of the captain to detain them against their will; still the agent of the owner, in giving his testimony upon this hearing, very frankly stated that, in case of difficulty in supplying their places at Manilla, these men will be detained, rather than suffer the vessel to be detained for want of a crew. If they shall be coerced into continued service after the termination of their term of service, they will be entitled to damages, and, in view of all the circumstances, I think that they should have such protection as the court can give, without doing injustice to any one. The respondent has offered to give a bond obligating himself to fulfill his contract with the Chinese members of his crew with respect to returning them to Hong Kong in due time, and I will accept his offer, provided that the bond shall be executed by Mr. Dodwell, the ship's agent, also, as a joint obligor or surety. I

will fix the sum of $5,000 as the penalty, and upon filing such a bond in favor of the clerk of this court for the benefit of each and all of the Chinese seamen now on board the ship this proceeding will be dismissed.