### THE J. B. WILLIAMS.

#### (District Court, W. D. Pennsylvania. December 21, 1903.)

#### No. 7.

**1. SEAMEN—RIGHT TO LEAVE VESSEL—DEVIATION FROM VOYAGE.**

Under evidence showing that it is quite a general custom for steamers towing coal boats down the Mississippi, when having boats for Red river points, to drop them at Natchez or points near there, and on returning northward to pick them up and take them up the Red river, such a side trip cannot be deemed a deviation from the voyage which justifies one shipping as a hand at Pittsburgh, for a towing trip south and return, in leaving the service at Natchez on the return trip, and by so doing he forfeits his right to return transportation from that point to Pittsburgh.

In Admiralty. Suit for wages.

C. G. McIlvain, for claimant.

Lowrie C. Barton, for libelant.

BUFFINGTON, District Judge. The proofs in this case satisfy us the libelant hired at Pittsburgh for a trip to no particular port or for no definite time, but contemplated a towing trip south and a return to the port of shipment. Indeed, libelant admits he did not know the vessel was bound for New Orleans until after he shipped. The Williams proceeded to that port, and on her return stopped at Natchez, left her tow of empties there, and took a number of loaded boats that she had left at Natchez on the down trip, or that had been left there by other boats, turned back to the Red river, and towed them up that stream. The side trip occupied, going and coming, but 29 hours. As this trip involved the boat going south, libelant and a number of other hands contended the voyage was ended at Natchez, and refused to work further. They were paid off in full. Libelant now sues for his return transportation from that point to Pittsburgh. The Williams promptly returned to Natchez, took on her tow, and returned to Cincinnati, where she was laid up by stage of water, and from thence shipped her crew home by rail. The proofs show that libelant was not discharged at Natchez, but voluntarily left the boat on the theory that the trip was terminated by the boat returning south. Had he remained on her, he would have been brought back to Pittsburgh. The proofs show that coal boats for the Red river are usually dropped by boats going south at Natchez, or points

below, and when sufficient accumulate it is a recognized custom for a returning boat to leave her tow on the main stream and carry the collected boats up the Red river as a side trip, if she has coal for Red river delivery, the stage of water permit, and the needs of the planters require. The proofs fully warrant us in considering such Red river side trip as an incident to a towing trip from Pittsburgh to New Orleans and return. Certainly it cannot be regarded as a deviation from the towing trip in contemplation of the parties at the time of shipment. Hostetter v. Gray (D. C.) 11 Fed. 179; In re Chung Fat (D. C.) 96 Fed. 202; Aikens v. Steamer Enterprise (No. 30, October Term, 1901) 127 Fed. ——. In view of the clearly proved usage, we are of opinion the side trip was not a variation from a towing trip south, and that it was a to be expected incident of such a voyage. The libelant was not justified in leaving the boat at Natchez, and is therefore not entitled to recover his fare from thence to Pittsburgh.

A decree may be drawn dismissing the bill at libelant's cost.